# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

W.P.

        Plaintiff

vs.                          Civil Action No. 3:14-CV-01893-
JAP-TJB

                          Honorable Tonianne J. Bongiovanni

PRINCETON UNIVERSITY
CYNTHIA CHERREY
COLE CRITTENDEN
KATHLEEN DEIGNAN
JOHN KOLLIGIAN
ANITA MCLEAN
MICHAEL OLIN
SHIRLEY TILGHMAN
DOES 1-10

        Defendants

R E C E I V E D

OCT 2 0 2014

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## PLAINTIFF'S OPPOSITION AND RESPONSE (WITH MEMORANDUM IN SUPPORT) TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

W.P.
jon.doe5654@yahoo.com

# TABLE OF CONTENTS

Table of Authorities                3

Preliminary Statement               6

Background                          6

Argument and Authority              7

Conclusion                          30

**TABLE OF AUTHORITIES**

| **CASES** | **Pages** |
|---|---|
| *49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 547 A.2d 1134 (App.Div.1988) | 17 |
| *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007) | 9 |
| *Bailey v. United States*, 516 U.S. 137 (1995) | 12 |
| *Basch v. George Washington University*, 370 A.2d 1364 (D.C.1977) | 20 |
| *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) | 25 |
| *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857 (1988) | 15 |
| *Clayton v. Trs. of Princeton Univ.*, 608 F.Supp. 413 (D.N.J. 1985) | 24-25 |
| *Conley v. Gibson*, 355 U.S. 41 (1957) | 8 |
| *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988), cert. denied, 498 U.S. 811 (1990) | 17 |
| *Easley v. Univ. of Michigan Bd. of Regents*, 627 F. Supp. 580 (E.D. Mich. 1986) | 21 |
| *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002) | 14 |
| *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292 (2001) | 17 |
| *Hajer-Nejad v. George Washington Univ.*, 802 F.Supp. 2d 166 (D.D.C. 2011) | 19-20 |
| *Hishon v. King & Spalding*, 467 U.S. 69 (1984) | 8 |
| *Manago v. District of Columbia*, 934 A. 2d 925 (D.C. 2007) | 20 |
| *McCachren v. Blacklick Valley School Dist.*, 217 F.Supp. 2d 594 (W.D.Pa. 2002) | 9-11 |
| *Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 186 N.J. Super. 548 (App. Div. 1982) | 25 |
| *Neitzke v. Williams*, 490 U.S. 319 (1989) | 8 |
| *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554 (1994) | 22-23 |

3

*Noye v. Hoffmann-La Roche Inc.*, 570 A. 2d, 14, 238 N.J. Super. 430 (App. Div. 1990) — 26

*O'Brien v. S. Suburban Coll.*, NO. 93 C 7172, 1994 WL 395029 (N.D. Ill. Jul 27, 1994) — 30

*Riverside Market Dev. Corp. v. International Bldg. Prods., Inc.*, 931 F.2d 327 (5th Cir.), cert. denied, 502 U.S. 1004 (1991) — 14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) — 8

*Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 595 (1997) — 25

*Southwell v. Univ. of Incarnate Word*, 974 S.W.2d351 (Tex. App. 1998) — 21

*United States v. Best Foods*, 524 U.S. 51 (1998) — 12-14

*United States v. Kayser-Roth Corp.*, 910 F.2d 24, 26 (CA1 1990) — 14

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 677 A.2d 747 (N.J.1996) — 18

*West End Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165 (3d Cir. 2013) — 7

*Witkowski v. Lipton*, 136 N.J. 385 643 A.2d 546 (1994) — 18

*Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 21 A.3d 1131 (2011) — 25

## STATUTES          **Pages**

Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* — 10, 12-14

Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* — 9-11

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U. S. C. § 9601 *et seq.* — 12-14

Rehabilitation Act, 29 U.S.C. § 794(a) — 9-11

## RULES          **Pages**

Fed R. Civ. P. 8(a)(2) — 8

Fed. R. Civ. P. 12(b)(6) — 8

Fed. R. Civ. P. 15(a)(1)(B)                                    7

**OTHER AUTHORITIES**                                      **Pages**

Restatement (Second) of Torts § 46 (1965)           14-15,
                                                                   17

Restatement (Second) of Contracts §§ 4, 5 (1979)      18

## PRELIMINARY STATEMENT

Defendant Princeton and its agents, the Named Individual Defendants, take the position that they were entitled to substitute their judgment with respect to Plaintiff's well-being for that of Plaintiff, his parents, and independent medical providers. Plaintiff disputes the legitimacy of that claim, as both federal and state laws are intended to protect the autonomy of the disabled. Plaintiff also challenges the *bona fides* of the Defendants' contention, as Defendant Princeton and its agents acted against Plaintiff's best interests and with indifference to their legal obligations to Plaintiff.

## BACKGROUND

On March 26, 2014, Plaintiff filed the original Complaint in this matter. He simultaneously filed an application for orders granting leave to proceed anonymously and otherwise protecting the identity of the Plaintiff from public disclosure. He subsequently filed a motion requesting an extension of the time to serve Defendants Princeton, Cynthia Cherrey, Cole Crittenden, Kathleen Deignan, John Kolligian, Anita McLean, Michael Olin and Shirley Tilghman (collectively, the "Defendants" and, with the exclusion of Defendant Princeton, the "Named Individual Defendants.") The motion was granted (a second motion seeking an extension of the time

6

to serve Doe Defendants 1-10 was denied, pending amendment of the Complaint to name them) and the Defendants subsequently were served.

On October 8, 2014, Defendants filed a Motion for Partial Dismissal of the Complaint.  Plaintiff concurrently with this Response is filing an Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B).  In such a situation, the filing of the Amended Complaint generally supercedes the original and renders it a nullity.  *See*, *e.g.*, *West End Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165 (3d Cir. 2013). This logically results in denial of any pending Motions to Dismiss.  In the event, however, that the Motion for Partial Dismissal is regarded as addressed to the Amended Complaint, the Plaintiff is herein responding to the Motion for Partial Dismissal.  A proposed for of order denying the Motion for Partial Dismissal is attached.

The Plaintiff also is concurrently filing a Notice of Motion to Proceed Anonymously.

## ARGUMENT AND AUTHORITY

### POINT I

### Standard of Review

Plaintiff does not dispute Defendants' authorities with respect to the standard of review, although obviously disagrees with respect to their

application to his claims.  Plaintiff adds, however, that Fed. R. Civ. Pro.

8(a)(2) requires only "a short and plain statement of the claim showing that

the pleader is entitled to relief," in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Conley v.

Gibson*, 355 U.S. 41, 47 (1957).  Thus, a complaint attacked by a Fed. R.

Civ. Pro. 12(b)(6) motion to dismiss does not need detailed factual

allegations. *Id.*  In addition, "Rule 12(b)(6) does not countenance . . .

dismissals based on a judge's disbelief of a complaint's factual allegations."

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  A well-pled complaint may

proceed even if it appears "that a recovery is very remote and unlikely."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court may dismiss a claim

only when it is clear that no relief can be granted under any set of facts that

could be proved consistent with the allegations found in the complaint.

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  As demonstrated

below, Plaintiff 's claims as stated in his original Complaint and Amended

Complaint, filed concurrently with this reply, withstand Defendants' Motion

to Dismiss.  Defendants do not lack fair notice of his claims.


## POINT II

### Plaintiff's Rehabilitation Act Claims against the Named Individual Defendants would not be Justiciable under current Third Circuit Precedent

but would be Justicial under an Alternative Approach Based on More
Careful Examination of that Act

The Named Individual Defendants argue that the claims against them
under Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)) should be
dismissed because individuals cannot be liable under that statute. Plaintiff
concedes that the Third Circuit has so held. *A.W. v. Jersey City Pub. Sch.*,
486 F.3d 791, 804 (3d Cir. 2007). Plaintiff urges reconsideration of this
conclusion based on the reasoning of *McCachren v. Blacklick Valley School
Dist.*, 217 F.Supp. 2d 594 (W.D.Pa. 2002), an overlooked case that
undertook a particularly careful analysis of this issue. The argument that
follows largely is drawn from the opinion in that case.

As a preliminary matter, it is helpful to review the nature of the
remedies that are available under the Rehabilitation Act. The Rehabilitation
Act contains three primary sections, Sections 501, 503 and 504. *See* 29
U.S.C. §§ 791, 793, 794. Section 501 prohibits discrimination on the basis
of disability by federal agencies in the employment context; Section 503
prohibits such employment discrimination by federal contractors. *See* 29
U.S.C. §§ 791, 793. Section 504, however, applies more broadly to
discrimination "under any program or activity receiving Federal financial
assistance." 29 U.S.C. § 794. Section 505 extends the rights, remedies, and

procedures of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., to all persons protected under Section 504 of the Rehabilitation Act unless the claim alleges employment discrimination. *See* 29 U.S.C. § 794a . Any Section 504 claim "alleging employment discrimination" is governed by the standards applicable to action under Title I of the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 794(d).

The ADA is divided into four different titles. Title I extends the antidiscrimination provisions of the Rehabilitation Act to all employers who are already covered by Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 12111-17. Title II applies to public services, like education or transportation. *See* 42 U.S.C. §§ 12131-65. Title III regulates public accommodations, *see* 42 U.S.C. §§ 12181-89, and Title IV covers several matters including telecommunications. *See* 42 U.S.C. §§ 12201-13. For the purposes of this case, it is most important to distinguish Title I from Title II. Notably, the enforcement mechanism for Title I of the ADA is Title VII of the Civil Rights Act, *see* 42 U.S.C. § 12117, while the enforcement mechanism for Title II of the ADA is Section 505 of the Rehabilitation Act, and therefore derivatively Title VI of the Civil Rights Act. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).

The foregoing statutory overview clarifies that the legal standards for claims raised under the Rehabilitation Act differ depending on whether or not the action is brought to remedy employment discrimination. Under Section 504 of the Rehabilitation Act, only claims alleging employment discrimination rely upon Title VII standards, *see* 29 U.S.C. § 794(d), though Title VI remedies are generally available for other Section 504 actions. *See* 29 U.S.C. § 794a.

In light of the applicable statutory framework, the deficiencies in concluding that individuals cannot ever be liable under Rule 504 of the Rehabilitation Act are clarified. The conclusion was first reached in the context of employment cases and thereafter simply was reflexively invoked in other contexts. *McCachren* undertakes a review of the early case law, demonstrating that the courts considering employment claims under the Rehabilitation Act concluded that the purpose of Title VII was to impose liability on employers for the acts of the employees acting as their agents, and that those employees were not included in the definition of "employer." 217 F.Supp.2d at 599-601. Since individual agents were not employers and could not be liable under Title VII, they were not proper defendants under the Rehabilitation Act in the context of employment-based claims. This reasoning would not and should not govern in the context of a non-

11

employment based case such as Plaintiff's.  Instead, the analysis of

*McCachren* should prevail.

## POINT III

<u>Plaintiff's ADA Claims against the Named Individual Defendants as
Operators of Princeton are Justiciable under the Supreme Court's "Plain
Language" Approach and Interpretation of the Word "Operator"</u>

The Plaintiff's Complaint alleges that the Named Individual

Defendants are "operators" of Princeton programs from which the Plaintiff

was discriminatorily excluded.  (Amended Complaint at ¶ ¶1(c) and 115).

"Operator" is a term used, but not defined, in the ADA.  *See*  42 U.S.C. §

12182(a).  Similarly, it is a term that is used, but not defined, in the

Comprehensive Environmental Response, Compensation, and Liability Act

of 1980 (CERCLA), 94 Stat. 2767, as amended, 42 U. S. C. § 9601 et seq.

In the latter context, the United States Supreme Court has had occasion to

consider its meaning.  In *United States v. Best Foods*, 524 U.S. 51,66 (1998),

the Court said ". . . of course we may again rue the uselessness of

CERCLA's definition of a facility's 'operator' as 'any person … operating'

the facility, 42 U.S.C. § 601(20)(A)(ii), which leaves us to do the best we

can to give the term its 'ordinary or natural meaning.' *Bailey v. United

States*, 516 U.S. 137, 145 (1995) (internal quotation marks omitted)."  The

Court expanded as follows:

12

> In a mechanical sense, to "operate" ordinarily means "[t]o control the functioning of; run: operate a sewing machine." American Heritage Dictionary 1268 (3d ed. 1992); see also Webster's New International Dictionary 1707 (2d ed. 1958) ("to work; as, to operate a machine"). And in the organizational sense more obviously intended by CERCLA, the word ordinarily means "[t]o conduct the affairs of; manage: operate a business." American Heritage Dictionary, supra, at 1268; see also Webster's New International Dictionary, supra, at 1707 ("to manage"). So, under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations. *Id.* at 66-67.

The *Best Foods* analysis thus clarifies that a plain meaning approach demands that, given the purposes of the ADA's concern with discrimination against the disabled, the individuals who are involved in managing, directing, or conducting operations specifically related to discriminatory acts or decisions about compliance with the ADA be treated as proper defendants.

The Court in *Best Foods* also said, "Under the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution. *See* 42 U.S.C. § 9607(a)(2). This is so regardless of whether that person is the facility's owner, the owner's parent corporation or business partner, *or even a saboteur who sneaks into the facility at night to discharge its poisons out of malice.*" *Id.* at 65 [Emphasis

13

added]. This makes it crystal clear that, under a plain language approach, an individual can be an "operator." The Court also noted with approval *Riverside Market Dev. Corp. v. International Bldg. Prods., Inc.*, 931 F.2d 327, 330 (5th Cir.) ("CERCLA prevents *individuals* from hiding behind the corporate shield when, as 'operators,' they themselves actually participate in the wrongful conduct prohibited by the Act" [Emphasis added]), cert. denied, 502 U.S. 1004 (1991) and *United States v. Kayser-Roth Corp.*, 910 F.2d 24, 26 (CA1 1990) ("a person who is an operator of a facility is not protected from liability by the legal structure of ownership"). 524 U.S. 51, at 65-66.

On the basis of the foregoing, Plaintiff's ADA claims against the Named Individual Defendants as operators of Princeton programs discriminating against him on the ground of disability should survive Defendants' Motion to Dismiss. Cases suggesting to the contrary, such as *Emerson v. Thiel College*, 296 F.3d 184, 189-90 (3d Cir. 2002), cited in the Motion to Dismiss, simply fail to observe the Supreme Court's plain language approach and completely disregard the precedent of *Best Foods*.

## POINT IV

### Plaintiff's Claims of Intentional Infliction of Emotional Distress Adequately Allege Extreme and Outrageous Conduct to Survive a Motion to Dismiss

With respect to claims for intentional infliction of emotional distress, New Jersey courts have adopted the definition of the Restatement (Second) of Torts § 46 (1965). *See Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (1988), which provides that conduct by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 544 A.2d 857, 863 (quoting Restatement (Second) of Torts § 46, comment d). The act must have been done with the intent to do the act and to produce the emotional distress, or in deliberate disregard of a high probability that emotional distress will follow. *Id.* The defendants' actions must have been the cause of the emotional distress, and the distress must be "so severe that no reasonable man could be expected to endure it." *Id.* (quoting Restatement (Second) of Torts § 46, comment j). Before submitting such a claim to the jury, the court must first determine whether reasonable minds could conclude that the alleged conduct has met this standard. Restatement (Second) of Torts § 46, comment h.

As alleged in the Complaint, Plaintiff was an eighteen-year-old freshman on the verge of release from a hospital when he was summarily banned from campus, class, and the shelter of his dorm room. (Amended Complaint at ¶ 32). At a time of great distress and vulnerability he was

mocked and laughed at. (Amended Complaint at ¶¶ 41, 43 and 51). He was

subjected to hearing his medical confidences specifically discussed with

non-medical personnel. (Amended Complaint at ¶ 40). He was told he

would be arrested if he attempted to retrieve his belongings from his room.

(Amended Complaint at ¶ 54). He was told he was banned from attending

class and would be subject to mandatory withdrawal as soon as he had

missed enough of the classes from which he would be banned. (Amended

Complaint at ¶ 42). He was told he would be arrested if he attempted to

access the Office of Disability for assistance. (Amended Complaint at ¶54).

The Complaint alleges that Princeton and the Named Individual Defendants

deliberately attempted to prevent any timely appeal by Plaintiff in an attempt

to wear him down and force his withdrawal. (Amended Complaint at ¶ 94).

The Complaint also alleges that the details of Plaintiff's confidential medical

records were, over his objection and despite his attempts at correction,

distorted to support the Defendants' desire to separate him from campus.

(Amended Complaint at ¶ ¶ 61, 67 and 76). The Complaint alleges that the

treatment that the Named Individual Defendants repeatedly alleged was

necessary for Plaintiff was not required by independent medical

professionals and would not have been covered by insurance. (Amended

Complaint at ¶ 67). The Complaint also alleges that the goal of Defendants'

collective course of conduct was to subject Plaintiff to intolerable emotional distress and thus force him to withdraw. (Amended Complaint at ¶ 100).

The conduct alleged by Plaintiff thus goes far beyond the workplace conduct described in each of the Defendants' authorities. As *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292,  297 (2001), one of those authorities, explains, "it is extremely rare to find conduct in the *employment* context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988), cert. denied, 498 U.S. 811 (1990)). [Emphasis added.]  Defendants' alleged conduct much more closely resembles the conduct found sufficiently outrageous to support a claim for intentional infliction of emotional distress in *49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 547 A.2d 1134 (App.Div.1988) (landlord failed to provide central heating, running water and reasonable security in a rent controlled building in an effort to induce the tenants to vacate).  As noted by the court in *49 Prospect St. Tenants Ass'n*, such a claim is supported if "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 472 (citing Restatement (Second) Section 46, comment d).  The

17

Complaint and Amended Complaint adequately allege conduct that would permit a reasonable person to conclude this standard had been met by the Defendants' conduct.

### POINT V

#### Plaintiff's Contract Claim Pleads Sufficient Facts to Raise It above the Speculative Level

The New Jersey Supreme Court specifically has held that contracts can be based on "reasonable expectations." *See Witkowski v. Lipton*, 136 N.J. 385, 393, 643 A.2d 546 (1994). New Jersey clearly has no requirement that all contracts be express, instead taking the position that "contracts implied in fact are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings. Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 574, 677 A.2d 747, 752 (N.J.1996) (citing Restatement (Second) of Contracts §§ 4 cmt. a, 5 cmt. a (1979)). The Complaint alleges that the contract between Princeton and Plaintiff "called for Plaintiff to fulfill certain financial obligations and for Princeton to provide Plaintiff with instruction, housing, food, and access to its amenities and programs." (Amended Complaint at ¶

158).  The Complaint amplifies that this contract is based on the

understanding of reasonable persons, that Plaintiff substantially performed

all of his obligations under the contract  and that it was materially breached

by Defendant Princeton when it excluded Plaintiff from class, his dorm

room, and campus.  (Amended Complaint at ¶ 92).  The Complaint also

specifically alleges that Rule 1.1.7 of Princeton's Rights, Rules,

Responsibilities document conveyed a contract term reasonably understood

as promising a student a fair, non-pretextual, and automatic review process

in the event the University sought to separate him.  (Amended Complaint at

¶ 93).

Defendants cite *Hajer-Nejad v. George Washington Univ.*, 802

F.Supp. 2d 166, 174 (D.D.C. 2011), describing it as dismissing a student's

breach of contract claim pled in conclusory fashion.  It is true that the court

in that case found that the plaintiff's "Second Amended Complaint fail[ed]

to provide adequate notice of his breach of contract claim to the extent he

intends to base it on an unidentified universe of 'regulations,' 'policies,'

'rules,' 'procedures,' and 'directives.'"  *Id.*at 175.  They neglect to

acknowledge that the court *refused* to dismiss the plaintiff's claim that the

Offer of Acceptance he received "included an implied promise that both

19

parties would abide by the regulations [for M.D. Candidates and] that the treatment of [the plaintiff] would be 'subject' to them." *Id.* at 176.

Defendants similarly cite *Manago v. District of Columbia*, 934 A. 2d 925,927 (D.C. 2007), characterizing it as dismissing a student's breach of contract claim for failure to allege sufficient facts to demonstrate the terms of the contract or reason to think it was breached and because she did not attach the contract to her complaint. They fail to note that the court there "recognize[d] the general rule 'that the relationship between a university and its students is contractual in nature.'" (citing *Basch v. George Washington University*, 370 A.2d 1364, 1366 (D.C.1977)). The complaint in *Manago* evidently was dismissed because it did not attach documents *purportedly attached* on which the plaintiff was relying for a description of the alleged contract. Interestingly, the *Basch* case cited in *Manago* stated that "[i]t is also accepted that the terms set down in a university's bulletin become a part of that contract." *Id.* at 1366-67. Whether any particular part of a bulletin is contractual in nature is determined by viewing the language of the document as would a reasonable person in the position of the parties. *Id.* at 1367.

The Defendants do not acknowledge the general understanding that a university bulletin is part of the institution's contract with its students, but

cite two cases probably intended to suggest that if the understanding is recognized it should not be applied to Princeton's Rights, Rules, Responsibilities. Both *Easley v. Univ. of Michigan Bd. of Regents*, 627 F. Supp. 580, 586 (E.D. Mich. 1986) and *Southwell v. Univ. of Incarnate Word*, 974 S.W.2e 351, 356 (Tex. App. 1998) specifically refer to language disclaiming intent to state contractual terms and/or reserving the right to change any statement without prior notice. There is *no* language in Rights, Rules, Responsibilities ("RRR") disclaiming intent to state contractual terms. In fact, RRR Section 1.1.1 (which was omitted from the version filed by the defendants with the court) states "Regulations governing the conduct of members of the University community will be revised only after deliberations in which representatives of the appropriate groups are invited to participate." Moreover, although the RRR Overview provision does refer to RRR as a "concise reference and guide," it goes on to state "For further information on particular aspects of policies and procedures — or their application to particular situations — consult Section 2 "Students and the University" (orange pages) [a part of RRR] or the policy manuals available from the Office of the Dean of the Faculty and the Office of Human Resources." Students would fairly understand they were being directed to a cross-reference within RRR, whereas faculty and staff respectively were

21

being directed to the Offices of the Dean and Faculty and Human Resources. As the Amended Complaint alleges, on information and belief, nothing in the referenced policy manuals would contradict the provisions of RRR relating to students. (Amended Complaint at ¶ 94).

Importantly, the Supreme Court of New Jersey has specifically addressed the role of attempted contractual disclaimers in documents conveying organizational policy. In *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554 (1994), the court found, as a matter of law, that the following disclaimer was ineffective: "The terms and procedures contained therein are not contractual and are subject to change and interpretation at the sole discretion of the Company, and without prior notice or consideration . . .." *Id.* at 414-16. First, the disclaimer was not sufficiently prominent. Despite being near the beginning of the manual, the disclaimer failed the court's test because it was not "highlighted, underscored, capitalized, or presented in any other way to make it likely that it would come to the attention of an employee reviewing it." *Id.* at 415-16. The court found that the prominence question, unlike the other issues involved in these cases, is one for the court to decide. *Id.* Moreover, the court held that while the effectiveness of the content of a disclaimer will often be a question for the jury, the content of this disclaimer was so inadequate it was ineffective as a

22

matter of law.  The disclaimer failed because it contained "confusing legalese," such as the terms "not contractual," "subject to...interpretation" and "consideration."  *Id.* at 414-15.  In light of this precedent, Defendants' claim that RRR would not be considered contractual must fail.

Defendants' Motion to Dismiss contends that if RRR Section 1.7.7 (requiring reasonably prompt review of summary bans) is contractual, the record thus far establishes that Princeton satisfied its obligation.  (Motion to Dismiss at p. 12-13).  This disregards the fact that Section 1.7.7 calls for a *review*, not a multi-week week struggle to be heard while being foreclosed from classes and a place to live.  It also would be reasonably understood to call for a *meaningful* review, rather than a rubber-stamp of the fore-ordained universal outcome.  A meaningful review would, among other things, have included meaningful consideration of Plaintiff's assertions of unlawful discrimination and meaningful consideration of alternatives to withdrawal (as opposed to blanket assertions that various methods of alleviating Princeton's alleged concerns would constitute fundamental alterations of its program).

Plaintiff's Complaint does acknowledge that almost a month after he was summarily banned from class, campus, and his dorm room, Defendant Cherrey wrote a letter to him demanding that he voluntarily withdraw within

23

four days or be subject to mandatory withdrawal. (Amended Complaint at ¶ 75. As alleged in the Complaint, that letter both distorted Plaintiff's background and urged a level of treatment not required by independent medical personnel and for which insurance would not have paid. (Amended Complaint at ¶ 76). The Complaint does not, as Defendants' motion suggests, acknowledge either that there was a prompt appeal process or that Princeton substantially complied with RRR Section 1.1.7. The Complaint specifically alleges substantial non-compliance insofar as Defendant Princeton subjected Plaintiff to exclusion from education and housing on discriminatory grounds, refused to follow its published procedures, delayed execution of its procedures in an attempt to force his withdrawal, abused his confidences, and engaged in pretextual justifications of its reasons for refusing to consider alternatives to withdrawal. (Amended Complaint at ¶¶ 89-100).

Defendant relies on *Clayton v. Trs. of Princeton Univ.*, 608 F.Supp. 413, 419 (D.N.J. 1985), a trial court's resolution on the merits that *particular* deviations from required procedures (which in fact were described in the then-applicable version of RRR) were not substantial and material. *Clayton* therefore is inapposite authority for the question of whether a breach of contract claim is adequately pled. The second of the Defendant's

authorities, *Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 270, 186 N.J. Super. 548, 563 (App. Div. 1982), is an appellate decision confirming the trial court's determination that Princeton had substantially complied with its own procedures following a remanded rehearing intended to remedy an earlier failure to follow procedures.  It similarly is inapposite in this case. The standard for pleading is whether or not a defendant is given fair notice of the plaintiffs' claims, not whether the plaintiff ultimately will be able to prove the merits of those claims.  *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007).

POINT VI

<u>Plaintiff's Good Faith and Fair Dealing Claim is Supported by Adequately Pled Facts to Raise it above the Speculative Level</u>

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing[,]" which requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 577, 21 A.3d 1131 (2011). *See also Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 423, 690 A.2d 595 (1997) (implied

covenant of good faith and fair dealing can create liability for contract

parties independent from express contract terms).

As stated by the court in one of Defendants' authorities, *Noye v.*

*Hoffmann-La Roche Inc.*, 570 A. 2d, 14, 238 N.J. Super. 430, 434 (App.

Div. 1990), "[i]n the absence of contract, there can be no breach of an

implied covenant of good faith and fair dealing." Defendants' Motion

misstates the law, however, in asserting (p. 13) that "[a]n implied covenant

of good faith and fair dealing cannot exist absent an *express* contract

between the plaintiff and the defendant." [Emphasis added.] In *Noye* itself,

"[t]here was no written agreement; plaintiff's rights arose from a company

manual entitled "Employee Policies & Procedures." *Noye* at 431.

According to the court, "[i]t is undoubted that [such a] contract, like any

other contract, contains an implied covenant of good faith and fair dealing."

*Id.* at 432. The Complaint alleges a contractual relationship pursuant to

which Plaintiff would meet his financial obligations and Princeton would

provide housing, food, an education and access to its program and amenities

and act in accordance with its published procedures and policies. (Amended

Complaint at ¶ ¶ 91-94). It also alleges that Princeton did not act in

accordance with the resulting implied covenant of good faith and fair dealing

insofar as it subjected Plaintiff to exclusion from education, food, housing,

amenities and programs on discriminatory grounds, refused to follow its

published procedures, delayed execution of its procedures in an attempt to

force his withdrawal, distorted his record and abused his confidences.

(Amended Complaint at ¶ ¶ 95-99). More particularly, the Amended

Complaint specifies that RRR 1.1.7 constituted a specific term of

Princeton's contract with Plaintiff that was violated in a manner that also

violated Princeton's implied covenant of good faith and fair dealing.

(Amended Complaint at ¶ 93).

## POINT VII

### Plaintiff's Complaint and Amended Complaint Allege Fraud with Sufficient Particularity to Present a Justiciable Issue

Defendants' Motion notes that fraud claims must be alleged with

particularity, noting the who, what, when, where, and how of the events at

issue. (Motion to Dismiss at p. 14). The Complaint alleges (at ¶¶ 24, 34 and

151-153) that Plaintiff was assured confidentiality by Defendant McLean at

a time she intended to breach his confidences and that Princeton students are

assured by the University Health Services' Patients Rights and Privacy web-

page that their medical records are confidential notwithstanding a University

policy calling for the contents of those records be shared with

27

administrators.  The Complaint also states (at ¶ 24) the specific language on the University Health Services' web-page, which reads as follows:

> PRIVACY AND YOUR MEDICAL RECORD
>
> UHS' confidentiality policy ensures a patient's right to privacy. . . .
>
> State and federal statutes protect a patient's records. . . . Only authorized health center staff may have access to the information in your record . . ..
>
> Emergency Medical Treatment: In a serious medical emergency, health services will give hospitals and other providers' information about your health history, medications you might be taking and any allergies

As explained at ¶¶ 35 and 35 of the Amended Complaint, presenting this language with the knowledge that University policy calls for sharing confidential information with school administrators is fraudulent.  More specifically, the conduct of Dr. Mclean was analogous to sitting under a sign saying "Your information is confidential," and eliciting confidences with the intent to disclose them.

## POINT VIII

### Plaintiff's Claims against Defendant Tilghman are Adequately Alleged to Raise those Claims above the Speculative Level

Plaintiff will require the tools of discovery to determine the actual job assignment of Defendant Tilghman as president of Princeton during the times relevant to his Complaint. It is, however, more than merely speculative to allege that the holder of an office generally understood to have executive authority over the operations of an entire enterprise has some amount of responsibility for establishing and effectuating its policies. The Complaint more than adequately allege that the breaches of Plaintiff's rights were not merely directed to him individually but were a matter of executing discriminatory University policies. (Amended Complaint at ¶¶ 56-57). It would be unfair to deprive Plaintiff of the ability to employ discovery both to establish the existence of Princeton's policies and to determine the extent of Defendant Tilghman's involvement with them. The Complaint specifically refers to Defendant Tilghman's personal participation in the creation and effectuation of the policies that the other individual Defendants discharged. (Amended Complaint at ¶¶ 59 and 102).

Defendant Tilghman makes use of an authority to which Plaintiff does not have access, but it is described in the Motion to Dismiss as holding that a college president could not be held liable for the torts of persons he supervised merely by reason of his position. *O'Brien v. S. Suburban Coll.*, NO. 93 C 7172, 1994 WL 395029, at *1 (N.D. Ill. Jul 27, 1994), cited at

29

Motion to Dismiss, p. 16. Plaintiff does not merely allege liability by reason of position. Plaintiff alleges that Defendant Tilghman personally participated in the violation of Plaintiff's rights by reason of her participation in the creation and effectuation of the policies relied upon to separate him from Princeton.

## CONCLUSION

The named individual Defendants are, under Plaintiff's proferred alternative approach, proper Rehabilitation Act defendants. The named individual Defendants are proper ADA defendants under the Supreme Court's preferred "plain language" approach to statutory interpretation and the Supreme Court's interpretation of the meaning of the term "operator." Plaintiff's intentional infliction claims are adequately pled insofar as the conduct he describes could be regarded by a reasonable person to be extreme and outrageous. Plaintiff's contract claim and claim for breach of the duties of good faith and fair dealing are adequately pled insofar as (1) a reasonable person would infer the existence of a contract between a student and the private university he or she attends; (2) a reasonable person would understand that Princeton's Rights, Rules, Responsibilities creates an

obligation on the part of Princeton to follow its published policies; and (3) Plaintiff's Complaint alleges facts that, if believed, support the conclusion that Princeton did not observe its published policies and facts that, if believed, support the conclusion that Princeton did not deal fairly and in good faith with Plaintiff. Finally, Plaintiff's Complaint adequately allege, on information and belief, that Defendant Tilghman personally participated in establishing and executing Princeton's discriminatory policies.

Respectfully submitted,

_____
W.P.
jon.doe5654@yahoo.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

W.P.

        Plaintiff

vs.                              Civil Action No. 3:14-CV-01893-
JAP-TJB

                              Honorable Tonianne J. Bongiovanni

PRINCETON UNIVERSITY
CYNTHIA CHERREY
COLE CRITTENDEN
KATHLEEN DEIGNAN
JOHN KOLLIGIAN
ANITA MCLEAN
MICHAEL OLIN
SHIRLEY TILGHMAN
DOES 1-10

        Defendants

## **ORDER**

## **DENYING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT**

It is this __ day of November, 2014, hereby

ORDERED that the Defendants' Motion for Partial Dismissal of the Complaint is DENIED.

SO ORDERED.

_____
Honorable Tonianne J. Bongiovanni

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing **PLAINTIFF'S**

**OPPOSITION AND RESPONSE (WITH MEMORANDUM IN**

**SUPPORT) TO DEFENDANTS' MOTION FOR PARTIAL**

**DISMISSAL OF THE COMPLAINT** has been sent by email and mailed,

postage prepaid, by U.S. mail this 20th day of October, 2014, to all counsel

of record for Defendants, to wit:

**ATTORNEYS FOR DEFENDANTS Princeton University, Cynthia
Cherrey, Cole Crittenden, Kathleen Deignan, John Kolligian, Anita
McLean, Michael Olin and Shirley Tilghman**

William F. Maderer (wmaderer@saiber.com)
Ryan E. San George (rsangeorge@saiber.com)
18 Columbia Turn[ike, Suite 200
Florham Park, NJ 07932

Henry Morris, Jr. (morris.henry@arentfox.com)
Karen Vladek (Karen.vladeck@arentfox.com)
ARENT FOX LLP
1717 K Street, NW
Washington D.C. 20036

                                                     _____
                                                          W.P.