## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

W.P.

     Plaintiff

vs.

PRINCETON UNIVERSITY
CYNTHIA CHERREY
COLE CRITTENDEN
KATHLEEN DEIGNAN
JOHN KOLLIGIAN
ANITA MCLEAN
MICHAEL OLIN
SHIRLEY TILGHMAN
DOES 1-10

     Defendants

Civil Action No. 3:14-CV-01893-PGS-TJB

Honorable Peter G. Sheridan



## BRIEF IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S MAY 29, 2015 ORDER

W.P.
jon.doe2654@yahoo.com

## Table of Contents

Table of Authorities – i

Introduction – 1

I.  Defendants Dispute Plaintiff's Showings of Confidentiality, the Risk of Severe Harm, the Extent of the Public Interest in Protecting His Identity – 2

    A. Many of Defendants' Authorities are Inapt – 3

    B. Defendants Ignore Applicable Precedents – 6

    C. Plaintiff has Proceeded Pro Se and Should be Entitled to Fair Inferences from His Affidavit – 8

    D. Defendants Ignore Plaintiff's Showings – 10

    E. Defendants' Logic with Respect to Severe Harm and Public Interest is Perverse – 11

  II.  Defendants' Expressed Concern with Plaintiff's Request for a Jury Trial – 13

III.  Defendants' Expressed Concerns for Matters of Fairness – 14

## Table of Authorities

Cases

*Anderson v. Bessemer City*, 470 U.S. 564 (1985) – 1

*Doe v. Alexian Bros. Med. Ctr.*, No. 96-C-2042, 1996 WL 210074 (N.D. Ill. Apr. 25, 1996)  14, 15

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997) – 4-5

*Doe v. Borough of Morrisville*, 130 F.R.D. 612 (E.D. Pa. 1990) – 7, 8-9

*Doe v. Cabrera*, 2014 WL 4656610 (Sept. 10, 2014) – 9-10, 13, 14, 15

*Doe v. El Paso*, 2015 WL 1507840 (W.D. Texas, Apr. 1, 2015) – 10, 15

i

*Doe v. Goldman*, 169 F.R.D. 138 (D. Nev. 1996) – 5

*Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) – 9

*Doe v. Hartz*, 522 F. Supp. 2d 1027 (N.D. Iowa 1999) – 3-4, 7

*Doe v. Ind. Black Expo, Inc.*, 923 F. Supp.137 (S.D. Ind. 1996) – 7

*Doe v. Individual Members of Ind. State Bd. Of Law Examiners*, No. 1:09-cv-0842-WTL-TAB, 2009 WL 2448468 (S.D. Ind. Aug. 8, 2009),*objections overruled*, 2010 WL 106580 (S.D. Ind. Jan. 4, 2010) – 6, 7

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) – 1, 3

*Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) – 7

*EEOC v. SPOA, LLC*, Civ. No. CCB-13-1615, 2013 WL 5634337 (D. Md. Oct. 15, 2013) – 9-10, 13, 15

*E.L. v. Scottsdale Healthcare Corp. Health Plan*, No. 2:11-cv-00271-REJ, 2011 WL 1748548 (D. Ariz. May 6, 2011) – 4

*Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992) – 1

*Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) – 1

*MacInnis v. Cigna Grp. Ins. Co. of Am.*, 379 F. Supp. 2d 89 (D. Mass. 2005) – 4

*Noe v. Carlos*, No. 2:08 cv 277, 2008 WL 4411558 (N.D. Ind. Sept. 35, 2008) – 4, 7

*Picking v. Pennsylvania Railway*, 151 F.2d 240 (3d Cir. 1945) – 8

*Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761 (D.N.J. 2000) – 1

*Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) – 2, 8, 15

*Rankin v. N.Y. Pub. Library*, No. 98 Civ. 4821 (RPP), 1999 WL 1084334 (S.D.N.Y. Dec. 2, 1999) – 3

*Simmons v. Lockhart*, 709 F. Supp.1457, 1459 (E.D. Ark. 1989), *aff'd on reh'g*, 915 F.2d 372 (8th Cir. 1990) – 5-6

*Smith v. Patel*, No. CV 09-04947, 2009 WL 3046022 (C.D. Cal. Sept. 18, 2009) – 3

*United States ex rel Luciano v. Pollack Health & Wellness, Inc.*, No. CIV.A. 13-6815 (MAS) (DEA), 2015 WL 2168655 (D.N.J. Apr. 30, 2015) – 3

*Wheeler-Whichard v. Doe*, No. 10-CV-0358S, 2010 WL 3395288 – 3

*Williams v. Brown*, No. 05-cv-796 RMB, 2007 2079935 (D.N.J. July 17, 2007) – 8


Statutes

28 U.S.C. § 636(b)(1)(A) – 1


Rules

Fed. R. Civ. P. 72(a); L. Civ.R. 72.1(c)(1)(A) – 1


Other Authorities

Hinshaw, Stephen P. & Andrea Stier, *Stigma as Related to Mental Disorders*, 4 Ann. Rev. Clinical Psychol. 367, 367 (2008) – 11

Kessler, Ronald C., et al, *Lifetime Prevalence and Age-of-Onset Distributions of DSM-IV Disorders in the National Comorbidity Survey Prelication*, 62 Archives Gen. Psyhciatry 593, 593 (2005), available at http://archpsyc.jamanetwork.com/article.aspx?articleid=208678#ref-yoa40305-19 – 11-12

Teachman, Bethany A. et al, *Implicit and Explicit Stigma of Mental Illness in Diagnosed and Healthy Samples*. 25 J. Soc. & Clinical Psychol. 75, 77 (2006) – 11

**Introduction**

Plaintiff's arguments in his Brief in Support of his Application for Orders Granting Leave to Proceed Anonymously and Otherwise Protecting the Identity of the Plaintiff from Public Disclosure ("Plaintiff's Application") and in his Reply ("Reply I") to the brief filed in opposition to Plaintiff's Application are incorporated by reference herein, as are the arguments in his Appeal of Magistrate Judge's Order of May 29, 2015 ("Plaintiff's Appeal"). Those arguments go directly to the factors (the "*Provident Life*" factors) that the Third Circuit determined, in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011), must be applied in deciding whether the presumption in favor of disclosing litigants' identities has been overcome by the needs of a particular case. This Reply ("Reply II") primarily addresses the shortcomings of the Defendants' Brief in Opposition of Plaintiff's Appeal ("Defendants' Brief II").

Before doing so, however, this Reply II notes once again the standard for review of a magistrate judge's order. The district court will reverse a magistrate judge's decision if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ.R. 72.1(c)(1)(A). Therefore, the district court "will review a magistrate judge's findings of fact for clear error." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997). Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo. *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). Moreover, a reversible abuse of discretion occurs when there is failure

1

"adequately to take into account judicially recognized factors constraining its exercise." *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011).  Such an abuse also occurs when the court "fail[s] to take into account the actual allegations made by the Plaintiffs . . . and fail[s] to adequately consider the Plaintiffs' extensive evidence about the scope of harm they face[] if they [are] forced to reveal their identities." *Id.*

## I.  Defendants Dispute Plaintiff's Showings of Confidentiality, the Risk of Severe Harm, the Extent of the Public Interest in Protecting His Identity

Defendants do not contest the Magistrate Judge's findings that *Provident Life* factors IV and VI (the weak public interest in knowing Plaintiff's identity and the lack of Plaintiff's illegitimate motives) count in the Plaintiff's favor.  Defendants take the position that Plaintiff has not introduced adequate evidence that he has kept his identity confidential (*Provident Life* factor I), that the harm to him of exposing his identity will be severe (*Provident Life* factor II), or that there is a strong public interest in protecting his identity (*Provident Life* factor III).[1]  In support of their position, they point to a variety of authorities, most of which are inapt.  They disregard authorities that do not support their position and also disregard Plaintiff's *pro se* status, which, at a minimum, should entitle him to the fair inferences that may be drawn from the affidavit filed in this matter.  Most important, they, like the Magistrate Judge, do not even mention the studies Plaintiff has invoked in support of his position or his own experience.  They ignore the fact that Defendants reacted to Plaintiff's mental disability by (undisputedly) prohibiting him from accessing his dorm room, attending classes and/or walking across the public areas of campus.  They ignore the fact that, because of Plaintiff's mental disability, Defendants threatened Plaintiff with arrest if he came on campus for any reason whatsoever.  The Defendants thus ignore the

---

[1] They additionally dispute that meritorious litigation asserting discrimination on mental disability grounds might not proceed if plaintiff's identity is not protected (*Provident Life* factor V).  This primarily is a logical matter depending on the resolution of Factors II and III, coupled with a determination that illegal discrimination is undesirable and should be opposed.

2

fact that their own actions exemplify what Plaintiff and those who are similarly situated can expect in reaction to disclosure of mental disability. Finally, some of Defendants' assertions with respect to the *Provident Life* factors are illogical.

### A. Many of Defendants' Authorities are Inapt

Notably, although Defendants acknowledge the test to be applied in deciding whether Plaintiff's identity should be protected is the Third Circuit's *Provident Life* approach, adopted in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011), they then proceed primarily to invoke cases that were decided under other approaches. More importantly, they fail to note the many ways in which their authorities must be distinguished from the instant case. This is particularly true with respect to those cases in which a plaintiff's claim of prospective harm or claim of public interest essentially was found wanting for lack of evidence. In some cases, the recital of feared prospective harm or public interest did not involve disclosure of disability at all, much less severe mental disability. Instead, in *United States ex rel Luciano v. Pollack Health & Wellness, Inc.*, No. CIV.A. 13-6815 (MAS) (DEA), 2015 WL 2168655 (D.N.J. Apr. 30, 2015), the plaintiff asserted fear of retaliation as a whistleblower with no additional evidence.[2] In *Smith v. Patel,* No. CV 09-04947, 2009 WL 3046022 (C.D. Cal. Sept. 18, 2009), an African-American using a service animal simply feared "irrelevant character attacks." In *Wheeler-Whichard v. Doe*, No. 10-CV-0358S, 2010 WL 3395288, the plaintiff contended that he would be embarrassed by disclosure of his medical records (which showed he suffered from flank pain), but there was no question of mental disability. In *Rankin v. N.Y. Pub. Library*, No. 98 Civ. 4821 (RPP), 1999 WL 1084334 (S.D.N.Y. Dec. 2, 1999), which was a disability case, the court noted that there was no social stigma associated with the plaintiff's substantial physical ailments. In *Doe v. Hartz*, 522 F.

---

[2] This appears to be the only case within the Third Circuit on which Defendants rely with respect to severity of harm or public interest and is easily distinguishable

Supp. 2d 1027 (N.D. Iowa 1999), the plaintiff had received "an unsolicited kiss and a rub on the back" and had since moved from the locale where the wrongdoing occurred.

In those cases relied upon by Defendants that did involve mental disability, the preponderance involved claims that the plaintiff did not receive a benefit to which he or she arguably was entitled by reason of the claimed disability, and in which the only evidence of the prospective harm of disclosure was a brief statement involving prospective stigma. *See, e.g., Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997), *MacInnis v. Cigna Grp. Ins. Co. of Am.*, 379 F. Supp. 2d 89 (D. Mass. 2005), *E.L. v. Scottsdale Healthcare Corp. Health Plan*, No. 2:11-cv-00271-REJ, 2011 WL 1748548 (D. Ariz. May 6, 2011). An unsupported recital of prospective stigma in that context is vastly different from this case, in which the basis of the claim is that Defendants' reaction to Plaintiff's mental disability resulted in the clear and continuing disruption of Plaintiff's life, and in which Plaintiff has invoked studies and provided clear evidence of adverse public reaction to his personal condition.

Moreover, not one of the cases advanced by Defendants involved a situation in which the defendants already had publicly disclosed intimate details from the plaintiff's medical records.[3] In fact, in cases in which the protection of identity is denied, the court often notes that details from the record can be sealed to protect the plaintiff's privacy interests. *See, e.g., MacInnis v. Cigna Grp. Ins. Co. of Am.*, 379 F. Supp. 2d at 89; *Noe v. Carlos*, No. 2:08 cv 277, 2008 WL 4411558, at *1 (N.D. Ind. Sept. 35, 2008).[4] Notably, the Seventh Circuit (which concededly is inhospitable to pseudonymity requests based on mental disability) has enunciated a standard for sealing psychiatric records based on whether the records "contain material that would be highly embarrassing to the average person yet somehow pertinent to this suit." *Doe v. Blue Cross &*

---

[3] Plaintiff renews, however, his contention that some of those details were inaccurate.
[4] *Noe v. Carlos* appears to be one of the very few cases cited by Defendants that is even arguably parallel to the instant case.

*Shield United of Wis.*, 112 F.3d at 872. That route is not available in this case in light of what Defendants already have chosen, at the earliest opportunity, to publicly reveal.

Finally, Defendants' characterization of authorities is questionable, although perhaps unintentional. In fact, at least one of the cases relied upon by Defendants was completely mischaracterized. *Doe v. Goldman*, 169 F.R.D. 138 (D. Nev. 1996) is inaccurately described in Defendants' Brief II (at p. 10) with the following parenthetical: "(application denied where plaintiff had history of substance abuse and mental health hospitalization)." In fact, the case did not involve either substance abuse or mental health hospitalization, and the court based its denial of pseudonymity in part on its finding that there were *no* indicia that the plaintiff currently or previously suffered from diagnosed mental illness.

Somewhat similarly, Defendants cited *Simmons v. Lockhart*, 709 F. Supp.1457, 1459 (E.D. Ark. 1989), *aff'd on reh'g*, 915 F.2d 372 (8th Cir. 1990) for the proposition that mental disorders are not uncommon, and in support of their argument that there is no public interest in maintaining Plaintiff's confidentiality. *Simmons* was a death penalty case involving a claim that the defendants' counsel was ineffective because he failed to exploit a witness's depression and use of Lithium. The court admitted selected portions of the witness's medical records "[b]ecause this proceeding has life and death implications." *Id.* at 1460. Its comment that mental illness and mental problems are common was in conjunction with the observation that anti-depressants are widely used, and that, since their side effects must be reported by the manufacturer, "with regard to the reactions or side effects of Lithium or any other drug, the final word is contained in the Physician's Desk Reference Book . . .." (The court went on to find that taking Lithium was not a reason to impeach the witness's testimony.) If anything, *Simmons*' suggestion that mental

5

health records were admissible only because of their "life and death" implications supports, rather than undercuts, Plaintiff's (and the public's) interest in confidentiality.[5]

The case to which Defendants' Brief II devoted the most attention was *Doe v. Individual Members of Ind. State Bd. Of Law Examiners*, No. 1:09-cv-0842-WTL-TAB, 2009 WL 2448468 (S.D. Ind. Aug. 8, 2009), *objections overruled*, 2010 WL 106580 (S.D. Ind. Jan. 4, 2010). The Defendants characterize the court as "easily" rejecting the motion for protection of identity (Defendants Brief II at p. 9). In fact, the district court upholding the ruling described it as "certainly a close case." 2010 WL 106580 at *2. Moreover, there are a number of nuances vital to understanding the holding that are absent from Defendants' Brief II. First, the Southern District of Indiana is in the 7th Circuit, which clearly is inhospitable to pseudonymity requests based on mental health claims but nonetheless permits sealing of medical records (which it is too late to do in this case). Second, although the case alleges discrimination on the basis of questions asked about mental health records, the suit was about striking down the questions as a matter of law, not whether the plaintiff should be denied bar admission. 2009 WL 2448468 at *3. Thus, there would have been no need for the specifics of the plaintiff's mental health records to be disclosed (as has already occurred in this case). Fourth, the court in the *Ind. State Bd.* case found that information about the plaintiff's identity already was in the public domain. *Id.* at *2.

### B. Defendants Ignore Applicable Precedents

Although Defendants acknowledge that the Third Circuit's approach to disclosure of identity is known as the "*Provident Life*" test, they do not acknowledge the outcome of the *Provident Life* case itself – which of course involved a grant of protection of identity on the

---

[5] The mental health records were those of a witness who already had been identified, rather than a litigant, but the court's observation is evidence of the general attitude that such records are sensitive and generally deserve protection.

grounds of mental disability. *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997). The opinion included the following language:

> [] Doe fears that if others, such as his friends and business associates, learn of his psychiatric problems he will be stigmatized in the community. Doe's fear is not unfounded. Unfortunately, in our society, there is a significant stigma associated with being identified as suffering from a mental illness. Moreover, . . . there is substantial public interest in maintaining the confidentiality of plaintiff's name. To start, the public has an interest in preventing the stigmatization of litigants with mental illnesses. Further, plaintiff's identity should be protected in order to avoid deterring people with mental illnesses from suing to vindicate their rights. *Id.* at 468.

Similarly, Defendants do not acknowledge that the Third Circuit recognized, at the time it adopted the *Provident Life* test, that mental disability was a reason for identity to be protected. Thus, in *Megless*, the court observed that "[e]xamples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'" (Citing *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990) They do not acknowledge that if the Third Circuit had not agreed with the result of *Provident Life* it surely would have noted its disagreement when it adopted the same approach. They do not acknowledge that the Third Circuit previously had allowed a pseudonymous lawsuit involving mental disability to proceed. *Doe v. Colautti*, 592 F.2d 704 (3d Cir.1979).

Moreover, insofar as Defendants invoke authorities applying different approaches than the one authorized in the Third Circuit, they failed to reckon with parts of those approaches that disfavor their position. For instance, in several of the cases they relied on, it was said that there was no allegation that the plaintiff had engaged or intended to engage in illegal activity, but that such an allegation would be a reason to protect the plaintiff's identity. *See, e.g. Doe v. Individual Members of Ind. State Bd. Of Law Examiners*, 2009 WL 2448468 at *2; *Noe v. Carlos*, 2008 WL 4411558, at *5. Similarly, several cases adverted to the need to protect information relating to minors. *See, e.g., Doe v. Hartz*, 52 F. Supp. 2d at 1047; *Doe v. Ind. Black Expo, Inc.*, 923 F.

7

Supp.137, 139 (S.D. Ind. 1996). Cases not cited by Defendants make it clear that the protection of information relating to minors is not limited to cases in which the plaintiffs are minors at the time of suit, but also extends to situations in which plaintiffs above the age of majority bring suit involving occurrences before they came of age. *See, e.g.*, *Plaintiff B v. Francis*, 631 F.3d at 1311. The record in this case clearly indicates that the Defendants publicly have suggested Plaintiff engaged in illegal conduct as the result of his mental disability, and have publicly revealed records relating to his health records as a minor. These are additional reasons to protect Plaintiff's identity provided by Defendants' own authorities.

Defendants also have ignored the recent *Doe v. Cabrera* case, in which protection of identity was granted notwithstanding (1) the plaintiff's prior press conferences, (2) the lack of a doctor's certificate attesting to the likelihood of future harm, and (3) the plaintiff's request for a jury trial. 2014 WL 4656610 (D. D.C. Sept. 10, 2014). *Doe v. Cabrera* will be further discussed below.

### C. Plaintiff has Proceeded Pro Se and Should be Entitled to

### Fair Inferences from His Affidavit

As Defendants' Brief II notes, it is usual for courts to liberally construe the pleadings and complaints of *pro se* litigants. *Williams v. Brown*, No. 05-cv-796 RMB, 2007 2079935 (D.N.J. July 17, 2007). This has been recognized in the Third Circuit since at least 1945. *Picking v. Pennsylvania Railway*, 151 F.2d 240 (3d Cir. 1945). The logic is, of course, that *pro se* litigants frequently will inartfully express themselves in writing or be ignorant of some custom. Lenience has been extended to *pro se* litigants seeking pseudonymity. *See, e.g.*, *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990) ("Since, in the instant case, we are dealing with

8

a *pro se* litigant, we have carefully examined the record to determine whether there are factors which justify permitting John Doe to continue to proceed under his pseudonym.")[6]

The Judge Magistrate found that Plaintiff's affidavit originally filed in support of his motion to proceed pseudonymously was wanting in failing to refer to a specific number of limited disclosures. It nonetheless should be entitled to its fair inferences. Disclosure to a "few close friends" fairly denotes that disclosure was made to a very limited number of friends, as well as that those friends could be expected to maintain Plaintiff's confidences. This is precisely the terminology invoked by the court in *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006), to convey that the confidentiality of the plaintiff's identity had been adequately maintained to justify an order granting pseudonymity. Defendants' speculation that the plaintiff's underlying declaration in *Hartford* may have been more detailed is only that – speculation – and seeks to penalize Plaintiff in this case for not knowing (if he should have known) that using the terminology employed in the *Hartford* decision would be deemed inadequate. Plaintiff should be regarded as having satisfactorily maintained his confidentiality and thus having satisfied the first factor of the *Provident Life* test.

Defendants and the Judge Magistrate also find fault with Plaintiff for relying on his own assertion that he fears worsening of his mental condition by reason of disclosure of his identity (which would go to the second *Provident Life* factor), noting that in *Hartford* a doctor's letter was filed to the same effect. Plaintiff should, however, be entitled to the same belief accorded to the plaintiffs in *Doe v. Cabrera*, 2014 WL 4656610, and a complainant in *EEOC v. SPOA, LLC*, Civ. No. CCB-13-1615, 2013 WL 5634337 (D. Md. Oct. 15, 2013). This is because fear of mental harm is entire plausible and would be, to the average person, completely predictable

---

[6] Pseudonymity was denied because "[t]he only grounds that we can find in the record is an unsubstantiated allegation concerning the disclosure of some supposedly secret court information concerning plaintiff, and his apparent desire to prevent his new community from knowing about the litigation concerning his employment history."

9

under the circumstances. In *Cabrera* the court found that the plaintiff, who had alleged her rape by the defendant, by her own assertions had adequately supported the conclusion that she would suffer additional mental harm if her identity was disclosed. *EEOC* was to the same general effect. *Doe v. El Paso* appears to have gone even further, with the court stating (in a case involving an invasive personal search and evidently in the absence of either a medical opinion or the plaintiff's own assertion) "the Court is further concerned with any mental harm that may result to Plaintiff if she were required to proceed in this action under her real name." 2015 WL 1507840, at *5 (W.D. Texas, Apr. 1, 2015).

### D. Defendants Ignore Plaintiff's Showings

Defendants' Brief II (at p. 6) contends that "W.P. pointed to nothing, save for his amorphous and self-serving *ipse dixit*" in support of his contention of threatened harm (which goes to the second factor of *Provident Life*). Similarly, Defendants' Brief II (at p. 7) states that "W.P. pointed to no supporting evidence" that revealing his identity would stigmatize him and deter other mentally ill plaintiffs from filing suit, and (at p. 12) says "W.P. points to nothing" that supports his contention that he and/or future litigants might be dissuaded from bringing litigation. These statements are baffling. They simply ignore what Plaintiff did point to, as well as all fair inferences that should be drawn.

First, Plaintiff has explained that he had, in the past, been subjected to seriously adverse consequences when his condition was known. He was evicted from his dorm room, denied access to education, and forbidden to walk across areas of campus completely open to the public. When he applied for readmission, he was subjected to an intrusive process not generally imposed on readmission applicants. He also explained that he is a continuing student at Princeton and fears retaliation by Princeton's agents if his identity is known.

10

Second, Plaintiff has provided evidence of public reaction to him as a prospective "school shooter," simply because he suffers from mental disability.

Third, Plaintiff has cited studies documenting the stigma associated with identification as being mentally ill. Quoting from the abstract of Stephen P. Hinshaw & Andrea Stier, *Stigma as Related to Mental Disorders*, 4 Ann. Rev. Clinical Psychol. 367, 367 (2008), "Individuals with mental illness receive harsh stigmatization, resulting in decreased life opportunities and a loss of independent functioning over and above the impairments related to mental disorders themselves. We begin our review with a multidisciplinary discussion of mechanisms underlying the strong propensity to devalue individuals displaying both deviant behavior and the label of mental illness." Similarly, Bethany A. Teachman et al, *Implicit and Explicit Stigma of Mental Illness in Diagnosed and Healthy Samples*. 25 J. Soc. & Clinical Psychol. 75, 77 (2006), found significant evidence that "the label 'mentally ill' makes it more difficult to obtain work and housing, and to gain acceptance from peers and co-workers, regardless of the individual's behavior." Among other things, it is a fair inference that the risks of such stigmatization and adverse consequences are severe enough to dissuade prospective litigants from bringing meritorious claims.

### E. Defendants' Logic with Respect to Severe Harm and Public Interest is Perverse

Defendants appear to make the claim that because mental disorders are not uncommon, there is no stigma attached to them. (Defendants' Brief II at pp. 8-9) They do cite one study for the proposition that mental disorders are not uncommon (Ronald C. Kessler et al, *Lifetime Prevalencfe and Age-of-Onset Distributions of DSM-IV Disorders in the National Comorbidity Survey Prelication*, 62 Archives Gen. Psyhciatry 593, 593 (2005)), but do not submit *any* studies that say there is no stigma attached to counter the studies cited by Plaintiff. It would be surprising, indeed, if any such studies could be found. Defendants' own cited study does, however, refer to the "enormous personal and societal burdens of mental disorders" (including

11

"early mortality"), and note the hard work done by the researchers to overcome "the well-known bias against reporting embarrassing behaviors" even in an anonymous context. These observations are not noted in Defendants' Brief II.

Defendants make the leap from noting that mental problems are not uncommon to asserting that "general reluctance" to expose mental disorder would "invariably swallow the rule presuming openness in judicial proceedings," evidently trying to suggest that some very large number of plaintiffs subsequently would proceed pseudonymously. This is far-fetched. Not all cases involve mental disability, much less diagnosed mental disability. Not all persons with mental disability will have had it sufficiently exposed to suffer discrimination as a result. Not all persons who have suffered discrimination as the result of their mental disability will be able to bring suit. And, as the Kessler study notes, "The fact that nearly half the population will meet the criteria for a mental disorder at some time in their life does not mean that they will all need treatment."

Moreover, the Defendants' dismissive reference to "general reluctance to expose mental disorder" flatly disregards what actually is at stake in the instant case. There is a difference between being publicly labeled as having a mental disorder and having the specific contents of one's medical records publicly disclosed – as has resulted from Defendants' actions in this case. The first by itself is stigmatizing, as Plaintiff's indicated studies have shown. The second is not only stigmatizing but involves disclosure of matters of utmost intimacy.[7] It is an impossible catch-22 to suggest that college freshmen should disclose the details of their mental health history as minors in order to seek treatment, and then be able to complain about misuse of that history only at the price of seeing it paraded in the public eye, clearly labeled with their names.

---

[7] This is not a stated factor in the *Providence Life* approach, but clearly is subsumed in the severity of harm and public interest prongs. It is, however, a stated factor in a number of the cases cited by Defendants – including cases noting the availability of sealing parts of the record.

## II. Defendants' Expressed Concern with Plaintiff's Request for a Jury Trial

Although the Magistrate Judge did not seem to regard Plaintiff's request for a jury trial as a factor in her determination, Defendants' Brief II expresses a variety of jury-related concerns already addressed in Plaintiff's Reply I.

For instance, Defendants articulate the fear that Plaintiff's face would be shielded when he testified.  Plaintiff already has indicated In Reply I (at p. 4) that he is willing to testify without shielding his face, provided no images are recorded.

Defendants also argue (Defendants Brief II at p. 13) that concealing W.P.'s identity minimizes the possibility that unknown witnesses will come forward.  As explained in Reply I (at pp. 4-5), the matters raised in the original Complaint are largely legal, rather than factual – requiring only the application of legal conclusions to the conduct the Defendants have themselves described in their Motion for Partial Dismissal of the First Amended Complaint. Moreover, to the extent that the case already has been the subject of publicity, it seems highly unlikely that anyone who was aware of any relevant, undisclosed facts would not make the connection.

Defendants state that concealing Plaintiff's identity at trial would confuse the jury by placing the Court's imprimatur on his claim of damage.  Plaintiff counters that the Court could very effectively instruct the jury to draw no such inference.  Juries easily could comprehend the reasons why a Plaintiff's identity should be protected when intimate medical records are involved, quite apart from any calculation of damage.

In any event, Plaintiff notes the argument made in Reply I to the effect that *Doe v. Cabrera* addressed a similar situation (albeit one involving alleged rape) and found that it would be appropriate for the matter to proceed pseudonymously until the time for trial. 2014 WL 4656610 at *7. *EEOC v. SPOA, LLC*, 2013 WL 5634337 was to similar effect.  This approach

13

would be possible in the instant case as well. Moreover, Plaintiff renews the request made in Reply I that if the court is not persuaded to permit the matter to proceed pseudonymously in light of his request for a jury trial, that he be given leave to amend his complaint to delete the request.

### III. Defendants' Expressed Concerns for Matters of Fairness

Defendants' arguments additionally go to the perceived unfairness of granting Plaintiff pseudonymity in the light of media coverage of the case and the naming of individual Defendants. With respect to the former, it is worth noting that Plaintiff has sought no media coverage and has not responded to media requests since the Defendants began voicing objection.[8] More importantly, to the extent that Plaintiff's remarks have been anonymous and quite general, without naming any individual Defendant, it is likely that they have had the same reputational effect as would any anonymous remark posted on the internet by a single individual – very little, if any.[9] Moreover, in a context in which the plaintiff had "attempt[ed] to try her case in the media or gain a tactical advantage through [her] public statements," the court expressed regret with respect to the trial in the media, but nonetheless held that the plaintiff's privacy interest justified protection of her identity. *Doe v. Cabrera*, 2014 WL 4546610 at *7. *See also Doe v. Alexian Bros. Med. Ctr.*, No. 96-C-2042, 1996 WL 210074 at *1 (N.D. Ill. Apr. 25, 1996) (finding that pseudonymous plaintiff's "press disclosures would [not] influence the outcome of a trial, affect the [individual] [d]efendant's rights, or prejudice this case in any way").

Allegations in a sworn Complaint might be of more concern. Nonetheless, it is important to recognize that, in the instant case, most of the allegations relate to conduct to which Defendants readily admit and for which they effectively congratulate themselves. (Memorandum in Support of Defendants' Motion for Partial Dismissal ("Memorandum") at p.1

---

[8] Plaintiff also disputes the accuracy of some quotations.

[9] Plaintiff distinguishes the "school shooter" remark he himself brought to the attention of the Magistrate Judge, which thus far is offered to demonstrate the prospect of future harm by reason of reaction to disclosure of his mental condition, not injury to his reputation.

14

("The core of this dispute can be simply stated: Princeton University refused to gamble with W.P.'s life.")  Defendants otherwise take the position (Memorandum at p. 10) that Plaintiff has "failed to allege extreme and outrageous conduct."  They characterize his claims as contending no more than "[] Princeton and/or the Named Individual Defendants purportedly evicted him from his dormitory room; asked him to withdraw from Princeton, subject to being readmitted the following spring semester; discussed his medical condition among themselves; failed to afford him a "meaningful appeal"; requested information about his medical condition; and treated him rudely." (Memorandum at p. 11).  This in no way equates to, much less outweighs, the stigma of mental disability or the intrusion of having one's intimate psychological treatment records publicly disseminated.

In addition, a number of courts have permitted plaintiffs to proceed pseudonymously notwithstanding the existence of one or more individual defendants. *See, e.g., Plaintiff B v. Francis*, 631 F.3d 1310; *Doe v. El Paso*, 2015 WL 1507840, *Doe v. Cabrera*, 2014 WL 4656610, *EEOC v. SPOA, LLC*, 2013 WL 5634337 and *Doe v. Alexian Bros. Med. Ctr.*, 1996 WL 210074.  This is because, of course, the determination of when to allow protection of a plaintiff's identity relies on the weighing of factors – factors Plaintiff has shown are balanced in his favor.

DATED: June 29, 2015          Respectfully submitted  and confirming all factual
                              assertions herein under penalty of perjury.

                              _____
                              W.P.

15

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **REPLY TO DEFENDANTS'**

**OPPOSITION TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S ORDER**

**DATED MAY 29, 2015** has been sent by email and mailed, postage prepaid, by U.S. mail this

29th day of June, 2015, to all counsel of record for Defendants, to wit:

**ATTORNEYS FOR DEFENDANTS Princeton University, Cynthia Cherrey, Cole Crittenden, Kathleen Deignan, John Kolligian, Anita McLean, Michael Olin and Shirley Tilghman**

William F. Maderer (wmaderer@saiber.com)
Ryan E. San George (rsangeorge@saiber.com)
18 Columbia Turnpike, Suite 200
Florham Park, NY  07932

Henry Morris, Jr. (morris.henry@arentfox.com)
Karen Vladek (Karen.vladek@arentfox.com)
ARENT FOX LLP
1717 K Street, NW
Washington D.C.  20036

W.P.

# HAVESON AND OTIS, LLC

ATTORNEYS AT LAW

194 NASSAU STREET

PRINCETON, NEW JERSEY 08542

(609) 921-0090

FAX

(609) 683-4636

HAL K. HAVESON
KIM AUGUSTUS OTIS

**HAND FILED**

June 29, 2015

R E C E I V E D

JUN 29 2015

AT 8:30
WILLIAM T. WALSH——M
CLERK

Clerk of The Court
United States District Court
District of New Jersey
402 East State Street
Trenton, New Jersey 08608

Re:    W.P. v. Princeton University, et al.
       Civil Action No. 3:14-CV-01893-PJS-TJB

Dear Sir or Madam:

      The above-referenced *pro se* plaintiff has requested that my firm cause the enclosed documents to be filed today.  Please be advised that I am <u>not</u> representing the *pro se* plaintiff.

      I am enclosing four copies of Plaintiff's Brief In Reply to Defendant's Opposition to Plaintiff's Appeal of Magistrate Judge's May 29, 2015 Order, including the Certificate of Service. I would ask that you file these document and return any extra conformed copies with the courier that has delivered them to you.

      Thank you for your attention to this matter.

                                        Very truly yours,

                                        HAVESON AND OTIS, LLC

                                        Kim Augustus Otis

Enclosures
KAO:sms

Note to Clerk:

In order to comply with Judge Sheridan's preferences, the enclosed brief is submitted today. It is, out of necessity, copied from a scan of the original. The original will be transmitted to your office by overnight delivery. My apologies for the trouble.

Very truly yours,

W.P.

RECEIVED

JUN 2 9 2015

AT 8:30_____M
WILLIAM T. WALSH
CLERK